**REDACTED VERSION**
No. 07-897C
(Judge Emily Hewitt)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LOGISTICS SUPPORT SERVICES JV.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

and

SANTA BARBARA APPLIED RESEARCH, INC.

Intervenor.

---

# GOVERNMENT'S OPPOSITION TO MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN M. SIMKIN
Assistant Director

DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
Tele: 202-307-0309

Date: January 10, 2008

Attorneys for Defendant

# TABLE OF CONTENTS


Page

INTRODUCTION ........ 1

BACKGROUND FACTS CONCERNING PROTEST ........ 3

ARGUMENT ........ 4

I. THE RECORD CONTAINS ALL RELEVANT MATERIAL REQUIRED BY THE DECEMBER 27 ORDER AND THERE ARE NO GAPS ........ 4

A. CONTRARY TO LOGISTICS, THE RECORD DOES CONTAIN INFORMATION CONCERNING THE TIMING OF THE DECISION TO ENFOLD THE PATRICK REQUIREMENTS INTO THE MULTIWING CONTRACT ........ 5

B. THE LACK OF A FORMAL CONSOLIDATION APPROVAL MEMORANDUM DOES NOT INDICATE THE COMPLETE ADMINSITRATIVE RECORD HAS NOT BEEN PRODUCED ........ 8

C. THE LACK OF E MAIL TRAFFIC INVOLVING RECIPIENTS OF EMAILS IS NOT EVIDENCE OF "GAPS" IN THE ADMINISTRATIVE RECORD ........ 9

II. DEPOSITIONS OF COLONELS CUNNINGHAM AND GILMOUR SHOULD NOT BE ALLOWED ........ 14

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Cases** Page(s)

Asia Pacific Airlines v. United States,
68 Fed. Cl. 8 (2005) .......... 17

Bannum, Inc. v. United States,
404 F.3d 1346 (Fed. Cir.2005) .......... 17

Beta Analytics v. United States,
61 Fed. Cl. 223 (2004) .......... 13

C.A.C.I., Inc.-Federal v. United States,
719 F.2d 1567 (Fed. Cir. 1983) .......... 13

Camp v. Pitts,
411 U.S. 138 (1973) .......... 14

Citizens to Preserve Overton Park, Inc., v. Volpe,
401 U.S. 402 (1971) .......... 13

Cubic Applications, Inc. v. United States,
37 Fed. Cl. 339 (1997) .......... 10

Esch v. Yeutter,
876 F.2d 976 (D.C.Cir. 1989) .......... 10, 11, 12, 14

Florida Power & Light v. Lorion,
470 U.S. 729 (1985) .......... 14

Galen Medical Assocs., Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004) .......... 13

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) .......... 15, 16, 17

International Resource Recovery, Inc. v. United States,
59 Fed. Cl. 537 (2004) .......... 17, 18

Lions Raisins, Inc. v. United States,
51 Fed. Cl. 238 (2001) .......... 14

MVM, Inc. v. United States,
46 Fed. Cl. 126 (1999) .......... 2, 3, 8

# TABLE OF AUTHORITIES

**Cases** Page

Murakami v. United States,
46 Fed. Cl. 731 (2000) .......... 10, 11

Northrop Grumman Corp. v. United States, .......... 14
50 Fed. Cl 443 (2001)

Orion Int'l Techs v. United States
60 Fed. Cl. 338 (2004) .......... 13

Paralyzed Veterans of American v. Sec. Veterans Affairs,
345 F.3d 1334 (Fed. Cir. 2003) .......... 9

Schism v. United States,
316 F.3d 1259 (Fed. Cir. 2002) .......... 9, 10

Tech Systems, Inc. v. United States,
50 Fed. Cl. 216 (2001) .......... 14

**STATUTE**

15 U.S.C. § 637(a) .......... 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| LOGISTICS SUPPORT SERVICES JV,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant,<br><br>and<br><br>SANTA BARBARA APPLIED RESEARCH, INC.<br><br>Intervenor. | ) | No. 07-897<br>(Judge Emily Hewitt)<br><br>**FILED UNDER SEAL** |

GOVERNMENT'S OPPOSITION TO MOTION
TO SUPPLEMENT ADMINISTRATIVE RECORD

## INTRODUCTION

Plaintiff, Logistics Support Services JV, has filed a motion pursuant to this Court's Scheduling Order of December 27, 2007, contending that there are "gaps" in the administrative record relating to the procurement of the Multiwing Logistics Support Contract (Solicitation Number FA2517-06-R-6003) and seeking to compel the Government to obtain certifications that relevant individuals have provided e-mails related to the procurement. Plaintiff also contends that, because the administrative record allegedly does not indicate the precise time the logistics requirements of Patrick Air Force Base were consolidated with the Multiwing Logistics Support Contract, it should be given leave to depose Colonel Harold J. Cunningham, chief contracting official at Peterson Air Force Base (AFSPC/A7K) and Colonel John E. Gilmour, chief

contracting official at Patrick Air Force Base (45 CONS/CC).

As we demonstrate, the Government has provided an extensive administrative record of over 2,000 pages and there are no "gaps." As required by the December 27 order, the administrative record includes "all documents relating to the possible inclusion of work to be performed at Patrick AFB . . . wherever within the Air Force any such documents were generated." Id. None of the "evidence" discussed in plaintiff's memorandum in support of its motion demonstrates the contrary. Further, the extensive time frame covered by the administrative record, as well as the detailed discussions concerning the potential enlargement of the Multwing Contract to include the Patrick requirements, confirms that all relevant materials have been provided.[1]

Further, because the administrative record demonstrates that the Air Force determined the Patrick requirements could be folded into the Multiwing Contract only after the Small Business Administration allowed the work to be released from the Section 8(a) program, which occurred on October 6, 2007, well after the award of the Multiwing Contract, there is no basis upon which to order the depositions of Colonels Cunningham and Gilmour.[2]

---

[1] We have not yet provided attachments to e-mails provided in the Administrative Record because of their bulk and because they did not appear to relate to the inclusion of the Patrick requirements in the Multiwing Contract. We expect to do so, however, in a supplement to the record to be filed shortly. The supplementation will also include e-mails transferred to plaintiff on January 7, 2007 but, not received in time to be included in the administrative record. The attachments to these e-mails will be included in the supplemental record.

[2] As this Court has noted: "Section 8(a) of the Small Business Act authorizes the Small Business Administration (SBA) to enter into contracts with other federal agencies and for the SBA to subcontract those contracts to disadvantaged small businesses. 15 U.S.C. § 637(a)." MVM, Inc. v. United States, 46 Fed. Cl. 126, 127 n.1 (1999).

BACKGROUND FACTS CONCERNING PROTEST

This is a post-award bid protest action in which Logistics contends that the United States Air Force violated procurement statutes and regulations when it awarded solicitation number FA2517-06-R-6003 to Santa Barbara Applied Research, Inc. a small business firm. The Multiwing Logistics Support Contract is a fixed-price, single award Indefinite Delivery, Indefinite Quantity contract with a $99.9 million dollar program ceiling and monthly prices for specific service contract line items ("clins"). AR at 1984. The award was determined upon the basis of past performance and price, both of which were equally weighted. Id. Because Santa Barbara and Logistics were approximately equal in past performance but Santa Barbara offered the lower price, Santa Barbara was selected for contract award. AR at 1994.

Logistics raises two issues in this protest. First, it contends that Santa Barbara did not demonstrate sufficient prior experience to qualify for the rating of High Confidence and that the rating, therefore, was arbitrary and capricious. Complaint, ¶¶ 42-44. Second, it contends that the Air Force expanded the requirements of the solicitation to include logistics operations for Patrick AFB prior to contract award and violated FAR 15.206(a) by failing to amend the solicitation to reflect the Patrick requirements prior to the award.[3] Complaint, ¶¶ 38-41. While Logistics moved for preliminary injunctive relief at the time it filed the complaint, this Court denied the motion as moot and issued a scheduling order requiring expedited filing of the administrative record.

The Government prepared the administrative record in accordance with the scheduling

[3] FAR 15.206(a) provides that: "When, either before or after receipt of proposals, the Government changes its requirements or terms and conditions, the contracting officer shall amend the solicitation."

order of December 27, 2007. While the record was provided to Logistics and the intervening defendant, Santa Barbara, on January 4, 2008 because of technical problems relating to the transfer of files, it was not filed electronically until January 8, 2008. Plaintiff and Santa Barbara have also been provided supplemental materials to be included in a supplement to the administrative record.[4] The Government anticipates seeking leave to file these materials in the near future. The record and supplemental record contain over 2,600 pages and include e-mails spanning a two year period (January 2006 to January 2008). Logistics' motion concerns whether the administrative record provides complete materials concerning the decision to transfer the Patrick logistics requirements to the Multiwing Contract. It does not concern Logistics' claim concerning whether Santa Barbara had sufficient prior experience to qualify for the award.

## ARGUMENT

### I. THE RECORD CONTAINS ALL RELEVANT MATERIAL REQUIRED BY THE DECEMBER 27 ORDER AND THERE ARE NO GAPS

While acknowledging that "the government has made multiple efforts to obtain documents and e mails covered by the Court's December 27, 2007 order," Memorandum In Support Of Motion To Supplement ("Memorandum") at 2, and that "DOJ counsel sent plaintiff numerous emails in zipped files that . . . alleviated certain issues with the administrative record previously produced," Id. at 4, Logistics contends that "gaps in the record still remain." Id. According to Logistics, the administrative record does "not reflect when the Air Force made [the] decision [to include the Patrick requirements in the Multwing Contract]." Id. at 6. Further, according to Logistics, the record does not contain "any documents that expressly memorialize

[4] Documents from the supplemental record are attached as exhibits for the Court's convenience.

the decision that the Air Force clearly made." Id. Finally, Logistics speculates that there must be additional records because there are few if any e-mails relating to individuals who received copies of some of the records. Id. at 6-9.

While Logistics claims the record does not contain evidence of the timing of the decision to enfold the Patrick requirements into the Multiwing Contract, it clearly does. Further, there is no formal decision document because the decision has not yet been formalized in an official record. Finally, the mere fact that there are not additional records pertaining to some individuals who received copies of relevant e-mails does not indicate Logistics is entitled to an order requiring the Government to supplement the record.

## A. CONTRARY TO LOGISTICS, THE RECORD DOES CONTAIN INFORMATION CONCERNING THE TIMING OF THE DECISION TO ENFOLD THE PATRICK REQUIREMENTS INTO THE MULTIWING CONTRACT

The e mail traffic demonstrates beyond cavil that, as of the date of the award of the Multiwing Contract on September 24, 2007, AR at 1696, the AF had not made the decision to migrate the logistics requirements of Patrick Air Force Base into the Multiwing Contract. Even if it is not possible from the e-mail traffic to pinpoint the precise date the decision was made, the fact that there was no decision prior to the award of the Multiwing Contract is demonstrated. For example, on July 30, 2007, Shelley Hall, Patrick AF Base contracting officer wrote to Addie Alexander, Peterson AF Base contracting officer, that Patrick was "in the development stage of preparing our RFP for the PAFB Logistics Services Contract ("LSSC")." AR 1996. This indicates that approximately six weeks prior to the Multiwing Contract award, Patrick was planning its own procurement. At this time, therefore, the requirements had not been migrated

from Patrick to Multiwing.

On September 24, 2007, the day of the Multiwing award, Addie Alexander wrote to her superiors, Karen Matkin and Doug Guldan, in an email titled "Command-Wide LOGOPS vs. 45th [Patrick] LSSC," that "Adding $24 M more [the Patrick Requirement] is not doable." This was a response to Ms. Matkin's inquiry as to whether it would be possible to enfold the Patrick requirements into Multiwing. The inquiry from Ms. Matkin to Ms. Alexander demonstrates that no decision had been made at that time to include the Patrick requirements in the Multiwing contract. Indeed, the contracting officer at the time of the Multiwing award, Ms. Alexander, took the position that including Patrick was "not doable." Id.

On the date of the award of the Multiwing Contract, Stephen McLaren, Director of Business Operations at Patrick, wrote to Karen Matkin, Director of Business Operations at Peterson (the administrative arm for the Multiwing Contract) that Patrick was considering whether it would transfer its logistics requirements to the Multiwing Contract. AR at 1998-99. He notes that he understood that there had previously been an SBA 8(a) issue (i.e., the Patrick contract had been reserved for a disadvantaged small business) which had been resolved. He noted, however, that an issue of whether a Patrick contract line item could be added to the Multiwing Contract still remained. Given the technical issue of whether a Patrick contract line item could be added to the Multiwing Contract, no decision on migration was or could have been made at this time.

On October 2, 2007, well after the award of the Multiwing Contract, Mr. McLaren wrote to Walter B. Wallace of the Small Business Administration regarding the Patrick logistics contract. AR 2001. He notes that "our command planned for the ability to bring us into their

contract . . . should it become necessary. I need to get your approval to do so." Id.. The SBA's approval of a release of the Patrick logistics requirements was thus necessary before the AF could decide to migrate the requirements from Patrick to the Multiwing Contract. As of October 2, 2007, however, this had not occurred. As noted in an e mail from Shelley Hall to Stephen McLaren, SBA's approval of the release of the section 8(a) requirements did not occur until October 3, 2007. AR 2428, Ex.1.

Further, while SBA approval was a condition of the migration from Patrick to Multiwing, there were other problematic issues that had to be resolved before a migration decision could be made. For example, on November 16, 2007, Ms. Alexander noted in an e-mail to Shelley Hall that the Patrick requirements could not be integrated with Multiwing until SBA provided a Section 8(a) release and the headquarters command had approved a consolidation memorandum justifying the incorporation of the requirements into the Multiwing Contract. AR 2015. As an AF consolidation primer notes, "Agencies shall not consolidate contract requirements with an estimated total value exceeding $5.5 million unless the acquisition strategy includes . . . a determination by a senior procurement executive that the consolidation is necessary and justified. Market research may indicate that consolidation of contract requirements is necessary and justified if the benefits of the acquisition strategy substantially exceed the benefits of each of the possible alternative contracting approaches." AR 2628-31, Ex.2. Thus, a consolidation analysis was required and, as of November 16, 2007, no analysis had been approved. AR 2015.

Based upon the e-mail traffic in the administrative record, therefore, it is evident that the decision to migrate the requirements of the Patrick Contract to the Multiwing Contract was made after the award of the Multiwing Contract. While the precise date of the decision is unknown,

the e mails establish that too many variables had been unresolved at the time of the award of the Multiwing Contract to be able to reasonably conclude that, at the time of that award, the Patrick requirements were part of the contract. See MVM, Inc. v. U.S., 46 Fed. Cl. at 130-32 (because the contracting officer determined the best price after eliminating one judicial district, it could be inferred that a decision had been made to eliminate the requirements of that judicial district prior to the award). Therefore, contrary to Logistics' contention, the administrative record does not contain gaps concerning the decision to migrate the Patrick requirements to the Multiwing Contract.

**B. THE LACK OF A FORMAL CONSOLIDATION APPROVAL MEMORANDUM DOES NOT INDICATE THE COMPLETE ADMINSITRATIVE RECORD HAS NOT BEEN PRODUCED**

Logistics assumes that the administrative record is not complete because it appears not to contain a formal approval memorandum. However, as we have demonstrated, the lack of this memorandum is not because the record is incomplete but, rather, because there has been no formal approval of the migration of the requirements at this time. While the e-mail traffic reflects that a decision was made to attempt to migrate the requirements and that SBS's clearance was received on October 4, 2007, the e-mail traffic reflects continuing discussions between Patrick and Peterson concerning issues related to the migration.

For example, an e-mail dated November 19, 2007 from Doug Guldan to Shelley Hall indicates that a consolidation analysis was required to migrate the requirements from Patrick to Peterson. AR at 2639, Ex. 3. Yet, an e-mail from Major Damon G. Coon to John E Gilmour dated December 5, 2007 indicates that the parties had not yet been able to finalize a performance work statement for the Patrick requirements which presumably would have foreclosed the

approval of a consolidation memorandum. AR 2656, Ex. 4. Contrary to Logistics' supposition, therefore, the lack of a formal approval memorandum reflects the continuing nature of the negotiations rather than a "gap" in the record. Given the presumption of administrative regularity, there is no reason to believe the Air Force would have omitted from the administrative record a formal approval memorandum reflecting the transfer of the requirements if one had existed at the time the administrative record was prepared. See, e.g., Paralyzed Veterans of American v. Sec. Veterans Affairs, 345 F.3d 1334, 1349 (Fed. Cir. 2003) ("[G]overnment officials are presumed to act in good faith and with regularity," quoting Schism v. United States, 316 F.3d 1259, 1302 (Fed. Cir. 2002) (en banc)).

**C. THE LACK OF E MAIL TRAFFIC INVOLVING RECIPIENTS OF E MAILS IS NOT EVIDENCE OF "GAPS" IN THE ADMINISTRATIVE RECORD**

Logistics points out that, with respect to the September 13, 2007 e mail sent by Colonel Gilmour of Patrick to Colonel Cunningham of Peterson, Colonel Gilmour copied a number of other officials at Peterson. Memorandum at 8. These individuals were: Dianne S. Holmes; Tracie L. O'Donovan; Barbara K. Bumby; Marnell L. Hoover; Sherri L. Richardson; Larry Griffin; Susan Graham; and Glenn W. Scanes. Id. Because Colonels Gilmour and Cunningham were beginning to consider the feasibility of transferring the Patrick requirements to the Multiwing Contract, plaintiff surmises that the administrative record should reflect additional e-mails from or to the individuals at Peterson copied by Colonel Gilmour in his September 13, 2007 e-mail to Colonel Cunningham. Id.

Further, Logistics points out that officials at Patrick communicated with Lt. Col. Renee Richardson of Peterson and Capt. Joseph Peloquin, 460 CONS/CC "regarding the inclusion of

Patrick AFB work in the Multi-Wing contract." Memorandum at 8. It argues that there should be e-mails reflecting these individuals' participation in the decision to migrate the contract. Id. Finally, Logistics notes that communications involving Patrick were sent to John D. Thompson, Col. Mark Bontrager, Robert L. Back, Maj. Matthew A. Sinning, and Lt. Col. Robert S. Widman. Memorandum at 9. Because the e-mail traffic generally does not reflect the involvement of these individuals in the migration decision, Logistics surmises there must be gaps in the administrative record.

As is well established, review in bid-protests such as this is generally confined to the administrative record. Cubic Applications, Inc. v. United States, 37 Fed. Cl. 339, 342-43 (1997). Furthermore, this Court has made it clear that supplementation of the administrative record is available only in limited exceptions to the general rule. Murakami v. United States, 46 Fed. Cl. 731, 734 (2000). Supplementation may be possible in one of the following situations:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

Esch v. Yeutter, 876 F.2d 976, 991 (D.C.Cir. 1989); Murakami, 46 Fed. Cl. At 735 (quoting Esch).

However, the Esch exceptions to the general rule against supplementation of the record are only triggered where "the omission of extra-record evidence precludes effective judicial

review." Murakami, 46 Fed. Cl. at 735. Furthermore, these exceptions must be narrowly construed to avoid the Court's review converting into de novo review. Id.

Logistics seeks to supplement the record because it contends that there are "gaps" which preclude this court from exercising meaningful judicial review and reflect the fact that the "agency considered evidence which it failed to include in the record." Esch, 876 F.2d at 991. However, the fact that Logistics surmises that, because individuals are listed on certain e-mails concerning the Patrick requirements there must be additional e-mails concerning these individuals does not make it so. As one e-mail in the administrative record reflects, the Air Force took special care in identifying all individuals who might have participated in e mail exchanges concerning the Patrick requirements. As Susan E. Bowman wrote to numerous officials at Patrick and Peterson on December 27, 2007:

> I need your immediate attention and assistance in gathering materials responsive to a lawsuit filed today by Logistics Support Services JV, in the Court of Federal Claims, in further protest of the award of the Multi-Wing Logistics Support contract to Santa Barbara. The court has ordered that we provide all internal communications related to inclusion of Patrick AFB requirements in this contract. I have extracted your names from the attached e-mail relating to this subject. I need you to identify all others in the Air Force community who may also have been involved in discussions on this matter so I can also contact them with this request. If you know of some who are on leave or otherwise not available, please provide me their names, organizations, and what you know of their involvement in this issue.

AR 2671-72, Ex. 5. Thus, the Air Force made a comprehensive effort to gather and disclose all relevant materials required by this Court's December 27, 2007 order. It has compiled an

administrative record of in excess of 2,600 pages. The fact that there may be some individuals copied on some e-mails whose names do not show up extensively on other e-mails is not evidence e-mails have been omitted from the administrative record. Rather, Logistics is on a fishing expedition and there is simply no evidence that the e-mails Logistics hypothesizes exist do, in fact, exist.

Indeed, Logistics' supposition that the individuals copied on e-mails must have been involved in the migration decision-making is belied by the text of the e-mails. For example, Logistics claims that officials at Patrick communicated with Lt. Col. Renee Richardson of Peterson and Capt. Joseph Peloquin, 460 CONS/CC "regarding the inclusion of Patrick AFB work in the Multi-Wing contract." Memorandum at 8. In fact, however, the response to Ms. Halls' e-mail indicates that Lt. Col. Richardson had not been involved in the issue but was replying because of the staff turn-over at Peterson. Memorandum Ex. 5. Given the turnover, there is no reason to believe the officials noted on the e-mail were involved in the transfer decision. Id.

Further, the individuals Logistics claim were not included in other e-mails were in fact included. For example, Marnell L. Hoover, who was copied in the exchange between Colonel Cunningham and Colonel Gilmore, Memorandum Ex.1, is the originator of an e-mail involving the Multiwing Contract dated September 6, 2007. Memorandum Ex. 6. Donna Wesel and Robert Back, individuals Logistics claim are not involved in e-mails are communicants in an email dated November 15, 2007. AR at 2010. Thus, e-mails from individuals who appear to be involved in the decision-making relating to the migration are not missing.

Finally, Logistics claims various Air Force officials who have provided e-mails should be

required to certify that there are not other e-mails they have failed to provide. Logistics cites no authority for such a demand and we are not aware of any. This is tantamount to an accusation of potential bad faith by the officials whose e-mails compose part of the administrative record. It is well-settled, however, that Government contract officials are presumed to exercise their duties in good faith. See Galen Medical Assocs., Inc. v. United States, 369 F.3d 1324, 1335 (Fed. Cir. 2004). Allegations of bad faith must rest on a strong evidentiary footing to overcome the normal presumption of regularity and good faith conduct by agency officials. Orion Int'l Techs. v. United States, 60 Fed. Cl. 338, 344 (2004). A plaintiff seeking to supplement an administrative record must make "a strong showing of bad faith or improper behavior" to compel the testimony of such officials. See Citizens to Preserve Overton Park, Inc., v. Volpe, 401 U.S. 402, 420 (1971); Orion, 60 Fed. Cl. at 344.

A showing of bad faith requires "hard facts," not inferences based upon "suspicion and innuendo." C.A.C.I., Inc.-Federal v. United States, 719 F.2d 1567, 1582 (Fed. Cir. 1983); Beta Analytics v. United States, 61 Fed. Cl. 223, 226 (2004). Given the presumption of good faith, to put bad faith into play, a plaintiff must first make a threshold showing of either a motivation for the Government employee to have acted in bad faith, or conduct that is hard to explain absent bad faith. Beta Analytics, 61 Fed. Cl. at 226. Logistics has not met this burden. Rather than evidence of bad faith, Ms. Bowman's e-mail reflects the Air Force's diligent effort to insure that all relevant e-mails and other documents were provided to the Court. Thus, there is simply no justification for Logistics' demand that Air Force officials "certify" that they have been honest in providing the relevant materials for the administrative record.

## II. DEPOSITIONS OF COLONELS CUNNINGHAM AND GILMOUR SHOULD NOT BE ALLOWED

Logistics contends that it should be permitted to depose Colonels Cunningham and Gilmour because, allegedly, the record is not clear concerning when the decision was made to transfer the Patrick requirements to the Multiwing Contract and the depositions could show "what agreement they (Colonels Cunningham and Gilmour) reached, or whether their strategy was approved by a higher official." Memorandum at 11. As we have already demonstrated, the record clearly shows that the decision to transfer the requirements post-dated the award of the Multiwing Contract to Santa Barbara. While there is no formal consolidation approval, this is because negotiations continue between the contracting officials at Patrick and Peterson concerning the detail of the requirements subject to transfer. The record contains the relevant evidence on these issues and would not be enhanced by the colonels' depositions.

As is well established, discovery in a bid protest is not a matter of right. In a bid protest, the Court's review is limited to the already-existing administrative record. See Lions Raisins, Inc. v. United States, 51 Fed. Cl. 238, 244-46 (2001); Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 222 (2001) (explaining basis for summary judgment on the administrative record). In reviewing agency action under this narrow scope of review, the "'focal point for judicial review should be the administrative record already in existence, not some record made initially by the reviewing court.'" Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973); Northrop Grumman Corp. v. United States, 50 jFjed. Cl. 443, 457 (2001) (citing Camp v. Pitts, 411 U.S. at 142).

Under Esch v. Yuetter, 876 F.2d at 991, the record may be supplemented when "agency

action is not adequately explained in the record before the court" or when "an agency considered evidence which it failed to include in the record." While Logistics contends the time and process for deciding to transfer the Patrick requirements to the Multiwing Contract is not "adequately explained in the record before the court" and may be based upon evidence "which [the agency] failed to include in the record," there is a "presumption of regularity" which requires the court to assume that all relevant documents have been produced and the decision reflects the administrative record. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001). "The litigant challenging that presumption necessarily bears a heavy burden [to establish that it should be permitted to take depositions of agency personnel]." Id.

While Logistics suspects e-mails recording communications between Colonels Cunningham and Gilmour have been omitted from the record because they might show the decision to transfer the Patrick requirements to the Multiwing Contract preceded the award of the Multiwing Contract to Santa Barbara, the evidence demonstrates the contrary. The e-mails in the record between Colonel Cunningham and Colonel Gilmour occur only 11 days prior to the award of the Multiwing Contract. AR 1335-36. Colonel Gilmour advises Colonel Cunningham that "we have been exploring the feasibility of meeting requirements for Vehicle Operations & Maintenance (VOM) and Logistics Support Services (LSSC) under the AFSPC Multi-Wing Logistics Contract." AR at 2335, Ex. 6. However, Colonel Gilmour expresses doubts concerning the inclusion of the Patrick requirements within the Multiwing Contract because "it appears our requirements are an order of magnitude larger than for other bases." Id. Colonel Cunningham notes in his reply that while "I think it would be possible to buy some time for

VOM and LSSC via the MWLC . . . there isn't enough ceiling . . . left on the MWLC to carry either the VOM or LSSC requirement for the full 5 year POP of the MWLC. . . . " Id. Following this exchange and a teleconference call on September 19, 2007, the officials at Patrick and Peterson continued to explore whether the requirements could be migrated. On September 20, 2007, four days before the award of the Multiwing Contract, Colonel Gilmour wrote: "I can now confirm, after a late telecon with A7K yesterday, that VOMS is Not a candidate for inclusion in MultiWing [while] LOGOPS, which is outside of IBSR, is in play." AR at 2345, Ex. 7.

On September 26, 2007, Stephen McLaren, the Business Manager at Patrick wrote: "I need you guys to run down the issue with SBA to make sure we don't have a problem with adding it to the Peterson AFB Small Business award." AR at 2367, Ex. 11. On September 28, 2007, the parties met in a teleconference call to further discuss whether the requirements could be migrated and the preconditions for doing so. AR 2370, Ex. 12. Thus, there is substantial evidence concerning the colonels' participation in the decision-making process and the fact that it was ongoing at the time of the award of the Multiwing Contract (and is still ongoing). As the e- mails discussed above demonstrate, the process of analyzing which requirements were transferable, obtaining the SBA approval to do so, and preparing the performance work statement for the Patrick requirements, all post-dated the award of the Multiwing Contract. Thus, the record is clear and there is no need for the depositions Logistics seeks.

Finally, the cases upon which Logistics relies do not support a supplementation of the record in this case. In Impresa, for example, the Court made it clear that "[t]his is a most unusual case" and that it was only permitting a deposition of the contracting officer because he had found

a company to be responsible with no explanation, despite knowledge of the criminal conduct of the individuals who controlled the company. 238 F.3d at 1328-29; 1338-39. The glaring disconnect between the known criminal activities of the company and a finding of responsibility created a gap in the administrative record that required supplementation. Id. at 1338. In this case the record is clear and there is no gap.

Bannum, Inc. v. United States, 404 F.3d 1346, 1354-57 (Fed. Cir.2005), does not discuss the conditions under which the administrative record may be supplemented but, rather, addresses the unique situation in which the court must determine whether a procurement error was prejudicial. While the Court notes that the evidence of prejudice may not exist in the record before the agency, in this case the pertinent record is the record before the agency. Thus Bannum is irrelevant.

In Asia Pacific Airlines v. United States, 68 Fed. Cl. 8, 18-19 (2005), the court noted that the rationale of the Postal Service officials who eliminated the protestor's bid from the procurement "was not apparent from the administrative record." Id. While the court noted the danger that "the officials' supplementary declarations, depositions, and testimony at trial may reflect wisdom gained by hindsight and may not represent the officials' actual bases for making decisions during the procurement," id., it allowed supplementation in order to obtain relevant evidence. Here, the relevant evidence has already been produced and the relationship between the award of the Multwing Contract and the timing of the transfer of the Patrick requirements to the Multiwing Contract is readily apparent.

In International Resource Recovery, Inc. v. United States, 59 Fed. Cl. 537, 541-43 (2004), the protesting incumbent for a trash hauling contract claimed its bid was wrongly disqualified

because, even though its bid did not include a mobilization plan, the Army's past practice did not require an incumbent bidder to provide a mobilization plan. While the Court permitted a limited deposition of the contracting officer to attempt to ascertain the Army's past practice with incumbent bidders, this was because this information was not available in the administrative record. Id. By contrast, the exchanges of e-mails provided by the Air Force in this case provide clear evidence of the decision-making process concerning the transfer of the Patrick requirements to the Multi-Wing contract.

Logistics also cites cases discussed in International Resource Recovery as support for its motion to supplement. Motion at 13. As is evident from the discussion in International Resource Recovery, all of these cases involved situations in which the matter at issue was not or could not have been raised, however, before the agency (such as whether prejudicial influences affected an award) or where gaps in the record precluded the Court from reviewing the agency's decision. International Resource Recovery, 59 Fed. Cl. at 542-43. These conditions do not apply in this case. Thus, these cases are irrelevant.

## CONCLUSION

For these reasons, plaintiffs' motion to supplement the administrative record should be denied.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Brian Simkin
BRIAN M. SIMKIN
Assistant Director

/s/ David A. Levitt
DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
Tel: 202-307-0309

Attorneys for Defendant

Date: January 10, 2008

CERTIFICATE OF FILING

I hereby certify that on this 10th day of January 2008, a copy of the foregoing "Defendant's Opposition To Motion To Supplement Administrative Record," with attachments, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ David A. Levitt
David A. Levitt

**EXHIBIT 1**

09/27/2007 11:20 407-380-8232 SBA ORLANDO PAGE 06

Oct 03 07 10:06a 45 SW/BZ (321)494-5599 p.1

# SMALL BUSINESS COORDINATION RECORD

REPORT CONTROL SYMBOL DD-AT&L(AR)1862

| 1. CONTROL NO. *(Optional)* | 2. PURCHASE REQUEST NO./REQUISITION NO. | 3. TOTAL ESTIMATED VALUE *(Including options)* | 4. SOLICITATION NO./CONTRACT MODIFICATION NO. |
|---|---|---|---|
| | | $20,000,000.00 | |

5. BUYER

| a. NAME *(Last, First, Middle Initial)* | b. OFFICE SYMBOL | c. TELEPHONE *(Include Area Code)* |
|---|---|---|
| Cazares, Antonio V. | LGCB | 321-494-3938 |

6. ITEM DESCRIPTION *(Including quantity)*

6a. FEDERAL SUPPLY CLASS/SERVICE (FSC/SVC) CODE

Logistics Support Services Contract (LSSC) – Integrates standard base supply, fuels, munitions, weapons storage and handling, combat oriented supply, air terminal operations, and transportation (excluding vehicle operations and maintenance).

7. TYPE OF COORDINATION *(X one)*

X INITIAL CONTACT
MODIFICATION
WITHDRAWAL

8. SMALL BUSINESS SIZE STANDARD

| a. NORTH AMERICAN INDUSTRY CLASSIFICATION SYSTEM (NAICS) CODE | b. NO. OF EMPLOYEES | c. DOLLARS |
|---|---|---|
| 561210 | | $32,500,000.00 |

9. RECOMMENDATION *(X as applicable)*

| YES | NO | *(If all recommendations are "No," explain in Remarks.)* |
|---|---|---|
| | | a. SECTION 8(a) *(X one)* (1) COMPETITIVE (2) SOLE SOURCE |
| | | b. SMALL DISADVANTAGED BUSINESS (SDB) SET-ASIDE |
| | | c. HISTORICALLY BLACK COLLEGES AND UNIVERSITIES/MINORITY INSTITUTIONS (HBCU/MI) SET-ASIDE *(List percentage)* % |
| X | | d. SMALL BUSINESS (SB) SET-ASIDE *(List percentage)* 100 % |
| | | e. EMERGING SMALL BUSINESS SET-ASIDE |
| | | f. EVALUATION PREFERENCE FOR SDBs |
| | | g. HUBZONE SET-ASIDE |
| | | h. HUBZONE SOLE SOURCE |
| | | i. HUBZONE PRICE EVALUATION PREFERENCE |

10. ACQUISITION HISTORY *(X one)*

| | | |
|---|---|---|
| | a. FIRST TIME BUY | |
| X | b. PREVIOUS ACQUISITION *(X all that apply)* | |
| | X | (1) SECTION 8(a) |
| | | (2) SDB SET-ASIDE |
| | | (3) HBCU/MI SET-ASIDE |
| | | (4) SB SET-ASIDE |
| | | (5) OTHER *(Specify)* |
| | | (6) TWO OR MORE RESPONSIVE SB OFFERS ON PRIOR ACQUISITION |
| | | (7) ONE OR MORE RESPONSIVE SDB OFFER(S) WITHIN 10% OF AWARD PRICE OF PRIOR ACQUISITION |
| | | (8) WOMAN OWNED SB |
| | | (9) SERVICE-DISABLED VETERAN SB |

11. SB PROGRESS PAYMENTS *(X one)* YES [X] NO

12. SUBCONTRACTING PLAN REQUIRED *(X one)* YES [X] NO

13. SYNOPSIS REQUIRED *(X one)* *(If "No," cite FAR 5.202 exception)* YES [X] NO

14. REMARKS

The market analysis for the follow-on requirement revealed we would not expect to receive offers from two or more 8(a) firms this time around. Air Force Space Command has awarded a command-wide logistics support contract in which they included our requirement should we need it. They performed due diligence in their market research analysis looking for HUBZONE, SDVOSB, 8(a) and SB and their findings resulted in an approval from the Denver,CO regional SBA office to go 100% small business set-aside. They awarded a contract to Santa Barbara Applied Research Incorporated, a small business in Ventura, CA for $99,000,000.00. It is the intent of the 45 Space Wing, based on our market research and that of AFSPC, not to issue a separate solicitation for the Wing's logistics support requirement. We intend to order our requirement off of the command-wide logistics contract.

15. REVIEWED BY SMALL BUSINESS ADMINISTRATION (SBA) REPRESENTATIVE

a. NAME *(Last, First, Middle Initial)*

b. SIGNATURE [signature] c. DATE SIGNED (YYYYMMDD) 3Oct07

16. LOCAL USE

17. CONTRACTING OFFICER *(X one)*

X CONCURS REJECTS

a. RECOMMENDATIONS *(Document rejections on reverse side)*

b. NAME *(Last, First, Middle Initial)* Hall, Shelley

c. SIGNATURE [signature] d. DATE SIGNED (YYYYMMDD) 20071003

18. SMALL BUSINESS SPECIALIST *(X one)*

X CONCURS APPEALS

NOTE: Any change in the acquisition plan this coordination record describes will require return for re-evaluation by the SB specialist.

STEPHEN A. MCLAREN
45 CONS Director of Business Operations

a. NAME *(Last, First, Middle Initial)* McLaren, Stephen A.

b. SIGNATURE [signature] c. DATE SIGNED (YYYYMMDD) 20071003

DD FORM 2579, DEC 2000 PREVIOUS EDITION IS OBSOLETE.

'08

**EXHIBIT 2**

**207.170 ◄ Consolidation ► of contract requirements.**

**207.170-1 Scope.**

This section implements 10 U.S.C. 2382.

**207.170-2 Definitions.**

As used in this section—

**"◄ Consolidation ► of contract requirements" means the use of a solicitation to obtain offers for a single contract or a multiple award contract to satisfy two or more requirements of a department, agency, or activity for supplies or services that previously have been provided to, or performed for, that department, agency, or activity under two or more separate contracts.**

**"Multiple award contract" means—**

**(1) Orders placed using a multiple award schedule issued by the General Services Administration as described in FAR Subpart 8.4;**

**(2) A multiple award task order or delivery order contract issued in accordance with FAR Subpart 16.5; or**

**(3) Any other indefinite-delivery, indefinite-quantity contract that an agency enters into with two or more sources for the same line item under the same solicitation.**

**207.170-3 Policy and procedures.**

(a) Agencies shall not consolidate contract requirements with an estimated total value exceeding $5.5 million unless the acquisition strategy includes—

(1) The results of market research;

(2) Identification of any alternative contracting approaches that would involve a lesser degree of ◄ consolidation ►; and

(3) A determination by the senior procurement executive that the ◄ consolidation ► is necessary and justified.

(i) Market research may indicate that ◄ consolidation ► of contract requirements is necessary and justified if the benefits of the acquisition strategy substantially exceed the benefits of each of the possible alternative contracting

Protected Material To Be Disclosed
Only In Accordance With U.S.
Court Of Federal Claims Protective Order

approaches. Benefits may include costs and, regardless of whether quantifiable in dollar amounts—

(A) Quality;

(B) Acquisition cycle;

(C) Terms and conditions; and

(D) Any other benefit.

(ii) Savings in administrative or personnel costs alone do not constitute a sufficient justification for a ◄ consolidation ► of contract requirements unless the total amount of the cost savings is expected to be substantial in relation to the total cost of the procurement.

(b) Include the determination made in accordance with paragraph (a)(3) of this section in the contract file.

**207.171 Component breakout.**

**207.171-1 Scope.**

**(a) This section provides policy for breaking out components of end items for future acquisitions so that the Government can purchase the components directly from the manufacturer or supplier and furnish them to the end item manufacturer as Government-furnished material.**

**(b) This section does not apply to—**

**(1) The initial decisions on Government-furnished equipment or contractor-furnished equipment that are made at the inception of an acquisition program; or**

**(2) Breakout of parts for replenishment (see Appendix E).**

**207.171-2 Definition.**

"Component," as used in this section, includes subsystems, assemblies, subassemblies, and other major elements of an end item; it does not include elements of relatively small annual acquisition value.

207.171-3 Policy.

DoD policy is to break out components of weapons systems or other major end items under certain circumstances.

(a) When it is anticipated that a prime contract will be awarded without adequate price competition, and the prime contractor is expected to acquire any component without adequate price competition, the agency shall break out that component if—

(1) Substantial net cost savings probably will be achieved; and

(2) Breakout action will not jeopardize the quality, reliability, performance, or timely delivery of the end item.

(b) Even when either or both the prime contract and the component will be acquired with adequate price competition, the agency shall consider breakout of the component if substantial net cost savings will result from—

(1) Greater quantity acquisitions; or

(2) Such factors as improved logistics support (through reduction in varieties of spare parts) and economies in operations and training (through standardization of design).

Protected Material To Be Disclosed
Only In Accordance With U.S.
Court Of Federal Claims Protective Order

(c) Breakout normally is not justified for a component that is not expected to exceed $1 million for the current year's requirement.

**207.171-4 Procedures.**

Agencies shall follow the procedures at PGI 207.171-4 for component breakout.

**EXHIBIT 3**

**From:** Hall, Shelley Civ 45 CONS/LGCBB
**Sent:** Monday, November 19, 2007 3:09 PM
**To:** McLaren, Stephen A Civ 45 CONS/DBO; Gilmour, John E Col 45 CONS/CC
**Subject:** FW: Inquiry

FYI.

Shelley A. Hall
Contracting Officer/Section Chief
45 CONS/LGCBB
1201 Edward H. White II St.
Patrick AFB FL 32925
Phone: 321-494-4394
DSN: 854-4394
Fax: 321-494-5136
e-mail: shelley.hall@patrick.af.mil

-----Original Message-----
From: Guldan, Doug Civ 21 CONS/LGCB
Sent: Monday, November 19, 2007 3:03 PM
To: Hall, Shelley Civ 45 CONS/LGCBB
Cc: Saporito, Anthony Civ 21 CONS/LGCB; Alexander, Addie D Civ 21 CONS/LGCB; Matkin, Karen G Civ 21 CONS/LGC; Widmann, Robert S LtCol 21 CONS/CC
Subject: RE: Inquiry

We are meeting at 1530 today to discuss, but we would have done the CA if 21st anticipated bringing this work on contract as part of our effort. Since our effort was a follow on to an existing SB contract, no CA was needed (we did not consolidate requirements).

In the case of the 45th, there is going to be a consolidation of two separate requirements, requiring a CA. DFAR 207 requires the CA if we put two or more contracts put onto one contract.

I'm still not sure that simply telling the SBA that we are moving 8a work to another contact meets the mandate to keep 8a work under the 8a program.

The 21st will gather some data on the 8a, ASP and CA requirements today.

Doug.

Doug Guldan
Chief, Base Support Flight
21st Contracting Sq, Peterson AFB, CO
719 556-4789, FAX x 4538, (DSN 834)

-----Original Message-----
From: Hall, Shelley Civ 45 CONS/LGCBB
Sent: Monday, November 19, 2007 12:55 PM
To: Alexander, Addie D Civ 21 CONS/LGCB
Cc: Guldan, Doug Civ 21 CONS/LGCB; Saporito, Anthony Civ 21 CONS/LGCB
Subject: RE: Inquiry

Based on my research, there would not be a requirement for a consolidation analysis to add Patrick AFB via modification to an existing contract. The DFARS would have required 21 CONS to do this during their acquisition development. Please let me know if there's something I'm missing.

Shelley A. Hall
Contracting Officer/Section Chief

**EXHIBIT 4**

**From:** Coon, Damon G Maj 45 CONS/LGCB
**Sent:** Wednesday, December 05, 2007 5:37 PM
**To:** Gilmour, John E Col 45 CONS/CC; McLaren, Stephen A Civ 45 CONS/DBO
**Cc:** Hall, Shelley Civ 45 CONS/LGCBB
**Subject:** RE: ACTION - REQUEST FOR STATUS

Sir,
I met with the LRF commander and his personnel today to discuss the status of the PWS for MWLGC and several issues came to light.

First and foremost they are very near a final draft perhaps a 98% product and the team stated that they may be complete by COB tomorrow but the worst case scenario remains the 12th, but they are hopeful.

I was very surprised to see that they are not simply writing a Task Order PWS but rather they are incorporating their 45 SW and 920th requirements into the basic contract PWS (they have also had to create separate PWS items for the 920th since there is currently no support agreement between the 45th and 920th -- additional CLINs will also be necessary for 920th due to funding concerns i.e. 45SW will not pay for services rendered to the 920th).

However, most surprising of all is that they have had to spend quite a bit of time making numerous corrections to the basic contract PWS, some administrative in nature but some are substantive. They stated that their functional (A4/Mr. Bob Back gave them this direction, first verbally, but later commented that there were no errors). They have marked all their changes in Red, but they feel that they have had an undo burden of having to go line by line through the PWS and research the AFI's etc to ensure there are no mistakes.

LRF also stated that they have received little direction from A4 on how they should go about incorporating their additions into the PWS. They did not receive the basic contract PWS until 10 Oct and they did not understand that they how they were suppose to incorporate their requirements into the PWS until early November. They also had no milestones to work to until 27 Nov...which states "review requirements NLT 30 Nov" and establishes the 5 Dec date of RFP to the contractor.

Bottom-line: LRF's PWS revisions are close enough to a final product that we do not currently need to begin a J&A to extend the existing LOGOPS contract. I think a greater potential for delay exists in the discussion of the "scope" of the changes 45 LRF is making to the PWS. I will contact the CO tomorrow to discuss her concerns.

V/R
Damon
Major Damon G. Coon
Installation Support Flight Commander
45th Contracting Squadron, Patrick Air Force Base, FL
* 321-494-7573, DSN: 854-7573, Fax 321-494-5136
* damon.coon@patrick.af.mil

-----Original Message-----
From: Guldan, Doug Civ 21 CONS/LGCB
Sent: Tuesday, December 04, 2007 4:34 PM
To: Alexander, Addie D Civ 21 CONS/LGCB
Cc: Hall, Shelley Civ 45 CONS/LGCBB; Coon, Damon G Maj 45 CONS/LGCB; Widmann, Robert S LtCol 21 CONS/CC; Matkin, Karen G Civ 21 CONS/LGC
Subject: RE: ACTION - REQUEST FOR STATUS

Hello all,

.he milestones are always flexible, but what we all need to understand is that the 1st of April will be here quickly. If we wait past this week, we will be pushing holiday schedules on the government and contractor's sides.

**EXHIBIT 5**

**From:** Holmes, Dianne S Civ AFSPC/A7K [Dianne.Holmes@peterson.af.mil]
**Sent:** Monday, December 31, 2007 2:09 PM
**To:** Bowman, Susan E Civ AFSPC/JA
**Cc:** O'Donovan, Tracie L Civ AFSPC/A7KP; Cunningham, Harold J Col AFSPC/A7K
**Subject:** FW: URGENT: VOM/LSSC

Susan,
Below is follow-on to email you cited. I have no additional info to provide.

Dianne
Dianne S. Holmes
Deputy Chief, Contracting Division
HQ AFSPC/A7K
719-554-5250 (DSN 692)
Caution: This message may contain competitive, sensitive, or other non-public information not intended for disclosure outside official government channels. Do not disseminate this message without the approval of the undersigned's office. If you received this message in error, please notify the sender by reply e-mail and delete all copies of this message.

-----Original Message-----
From: Cunningham, Harold J Col AFSPC/A7K
Sent: Friday, September 14, 2007 3:51 PM
To: Gilmour, John E Col 45 CONS/CC
Cc: Holmes, Dianne S Civ AFSPC/A7K; O'Donovan, Tracie L Civ AFSPC/A7KP; Bumby, Barbara K Civ AFSPC/A7KP; McLaren, Stephen A Civ 45 CONS/DBO; Hoover, Marnell L Civ 45 SW/CDA
Subject: RE: Status on VOM/LSSC

John,

;ithout getting into too much detail, I think it would be possible to buy some time for VOM and LSSC via the MWLC. However, there isn't enough ceiling (it's IDIQ with a $99.9 M ceiling) left on the MWLC to carry either the VOM or LSSC requirement for the full 5 year POP of the MWLC. So the issue is not the PEO threshold. However, as I've said before, we can't let a threshold drive acquisition strategy.

Suggest we chat on Monday.

Regards,

Harold

-----Original Message-----
From: Bowman, Susan E Civ AFSPC/JA
Sent: Thursday, December 27, 2007 2:47 PM
To: Gilmour, John E Col 45 CONS/CC; Holmes, Dianne S Civ AFSPC/A7K; O'Donovan, Tracie L Civ AFSPC/A7KP; Bumby, Barbara K Civ AFSPC/A7KP; McLaren, Stephen A Civ 45 CONS/DBO; Hoover, Marnell L Civ 45 SW/CDA; Hall, Shelley Civ 45 CONS/LGCBB; Richardson, Sherri L Civ 45 CONS/LGCAB
Subject: URGENT: VOM/LSSC

Ladies and Gentlemen,

I need your immediate attention and assistance in gathering materials responsive to a lawsuit filed today by Logistics Support Services JV, in the Court of Federal Claims in further protest of the award of the Multi-Wing Logistics Support contract to Santa Barbara. The court has ordered that we provide all internal communications related to inclusion of Patrick AFB requirements in this contract. I have extracted your names from the attached e-mail relating to this subject. I need you to identify all others in the Air ~orce community who may also have been involved in discussions on this matter so I can ılso contact them with this request. I must have all materials ASAP for submission to the court on 4 Jan 2008. If you know of some who are on leave or otherwise not available, please provide me their names, organizations, and what you know of their involvement in

this issue.

Please call me with any questions!

SUSAN E. BOWMAN, DAF
Attorney Advisor, Commercial and Fiscal Law HQ AFSPC/JAQ 150 Vandenberg St., Suite 1105
Peterson AFB CO 80914
692-3844
719-554-3844

P.S. The good news is that LSS's motion for a temporary retraining order/injunction to forestall performance on the new contract was dismissed.

CONFIDENTIALITY NOTICE: This electronic transmission may contain attorney work-product or information protected under the attorney-client privilege, both of which are protected from disclosure under the Freedom of Information Act, 5 USC 552. Do not release outside of DoD channels without prior authorization from the sender.

-----Original Message-----
From: Gilmour, John E Col 45 CONS/CC
Sent: Thursday, September 13, 2007 12:28 PM
To: Cunningham, Harold J Col AFSPC/A7K
Cc: Holmes, Dianne S Civ AFSPC/A7K; O'Donovan, Tracie L Civ AFSPC/A7KP; Bumby, Barbara K Civ AFSPC/A7KP; McLaren, Stephen A Civ 45 CONS/DBO; Hoover, Marnell L Civ 45 SW/CDA
Subject: FW: Status on VOM/LSSC

Col Cunningham -

Harold, I am passing this on as background information for a discussion I hope to have with you today or tomorrow.

Bottom line: We have been exploring the feasibility of meeting requirements for Vehicle Operations & Maintenance (VOM) and Logistics Support Services (LSSC) under the AFSPC Multi-Wing Logistics Contract.
This feasibility evaluation is associated with our acquisition planning for these separate contracts. Since your staff will be seeing both these strategies and contracts in the future, I think it is important to discuss what we found.

A little more background on these acquisitions:

VOM is part of the JBOSC de-bundling suite. Before my tenure, we had explored placing VOM on the Multi-Wing contract, but were told we could not, because at that time, the contract was expected to contain NASA requirements. Since then, NASA has pulled out due to expanded requirements. It is our sense that VOM fits nicely within the scope of the Multi-Wing contract; however, it appears our requirements are an order of magnitude larger than for other bases. Bottom line: Addition of our requirements will push that acquisition above the PEO threshold and will delay award.

LSSC is not associated with JBOSC de-bundling; it is a follow-on to our predecessor LOGOPS contract. In the past, we looked at the Multi-Wing contract, but we shied away from it because we are contemplating small business and Multi-Wing was planned to be full and open competition.
Now, however, Multi-Wing is small business. While we think that LSSC is well within the scope of Multi-Wing, again, our requirements are an order of magnitude greater than for other bases and will push it over the PEO threshold. Perhaps more importantly, I am concerned that the 45th Space Wing is taking a more aggressive approach to tenant funding than other AFSPC installations, and that going with the Multi-Wing will undermine those efforts, which have high visibility with Gen Helms.

The main reason that I want to discuss VOM, in particular, is that we should take the decision to segregate that from Multi-Wing with strategic forethought at the HQ AFSPC level, IMO. If we go our separate way for a requirement that is a natural fit for Multi-Wing, we will collectively lose an opportunity to achieve an early success at true strategic sourcing across AFSPC. I am good with doing that, but I would like to make sure that we have collegially discussed and agreed this.

**EXHIBIT 6**

**From:** Cunningham, Harold J Col AFSPC/A7K
**Sent:** Friday, September 14, 2007 5:51 PM
**To:** Gilmour, John E Col 45 CONS/CC
**Cc:** Holmes, Dianne S Civ AFSPC/A7K; O'Donovan, Tracie L Civ AFSPC/A7KP; Bumby, Barbara K Civ AFSPC/A7KP; McLaren, Stephen A Civ 45 CONS/DBO; Hoover, Marnell L Civ 45 SW/CDA
**Subject:** RE: Status on VOM/LSSC

John,

Without getting into too much detail, I think it would be possible to buy some time for VOM and LSSC via the MWLC. However, there isn't enough ceiling (it's IDIQ with a $99.9 M ceiling) left on the MWLC to carry either the VOM or LSSC requirement for the full 5 year POP of the MWLC. So the issue is not the PEO threshold. However, as I've said before, we can't let a threshold drive acquisition strategy.

Suggest we chat on Monday.

Regards,

Harold

HAROLD J. CUNNINGHAM, JR., Col, USAF
Chief, Contracting Division
HQ Air Force Space Command
(719) 554-5250
DSN 692-5250
Caution: This message may contain competitive, sensitive, or other non-public information not intended for disclosure outside official government channels. Do not disseminate this message without the approval of the undersigned's office. If you received this message in error, please notify the sender by reply e-mail and delete all copies of this message.

-----Original Message-----
From: Gilmour, John E Col 45 CONS/CC
Sent: Thursday, September 13, 2007 12:28 PM
To: Cunningham, Harold J Col AFSPC/A7K
Cc: Holmes, Dianne S Civ AFSPC/A7K; O'Donovan, Tracie L Civ AFSPC/A7KP; Bumby, Barbara K Civ AFSPC/A7KP; McLaren, Stephen A Civ 45 CONS/DBO; Hoover, Marnell L Civ 45 SW/CDA
Subject: FW: Status on VOM/LSSC

Col Cunningham -

Harold, I am passing this on as background information for a discussion I hope to have with you today or tomorrow.

Bottom line: We have been exploring the feasibility of meeting requirements for Vehicle Operations & Maintenance (VOM) and Logistics Support Services (LSSC) under the AFSPC Multi-Wing Logistics Contract. This feasibility evaluation is associated with our acquisition planning for these separate contracts. Since your staff will be seeing both these strategies and contracts in the future, I think it is important to discuss what we found.

A little more background on these acquisitions:

VOM is part of the JBOSC de-bundling suite. Before my tenure, we had explored placing VOM on the Multi-Wing contract, but were told we could not, because at that time, the contract was expected to contain NASA requirements. Since then, NASA has pulled out due to expanded requirements. It is our sense that VOM fits nicely within the scope of the Multi-Wing contract; however, it appears our requirements are an order of magnitude larger than for other bases. Bottom line: Addition of our requirements will push that


Protected Material To Be Disclosed
Only In Accordance With U.S.
Court Of Federal Claims Protective Order

**EXHIBIT 7**

**From:** McLaren, Stephen A Civ 45 CONS/DBO
**Sent:** Thursday, September 20, 2007 12:17 PM
**To:** Gilmour, John E Col 45 CONS/CC
**Subject:** Fw: INFO: ASP for Vehicle Ops and Fire and Emergency Services

We need to discuss. I see Glenn has 2 FY08 PRs so I'd be reluctant to move him full time until 1 Oct.

Rita and I looked at Glen's AFTAC workload and felt they (the rest of Ric's team) could carry on without him (but I'd want to discuss with Ric).

I was going to address the full time move of him following the award of those PRs. No replacement until after the award - AFTAC will have to live with that. They bled 45th resources for yrs and we are between a rock and a hard place because of AFPC.

You're thoughts?

--------------------------
Sent from my BlackBerry Wireless Device

----- Original Message -----
From: Graham, Susan Civ 45 CONS/LGCZ
To: Gilmour, John E Col 45 CONS/CC; McLaren, Stephen A Civ 45 CONS/DBO
Sent: Thu Sep 20 12:07:12 2007
Subject: INFO: ASP for Vehicle Ops and Fire and Emergency Services

Sirs,

In light of the email below, we need to reengage about bringing Glenn over from AFTAC immediately into LGCZ to work this program full time. As far as a replacement for him for the duration of the source selection, I still want to discuss this further and request Rita Griffin be involved concerning the AFTAC position/who is paying or can pay for Glenn issue, and whether that position can be borrowed without a replacement until next summer at which time he goes back over there.

I informed Celso that I am diverting the GS-12 vacancy vice Maizel in LGCZR to be the CO and work with Glenn on Vehicle Ops. We have the certificate and are evaluating candidates now with hopes of making a selection before the end of next week. However, based on AFPCs recent schedule history, it will take a month to get the offer extended to the individual and then a couple of weeks after that to move the individual into place.

Last I heard, we plan to use the 28 Sep time slot (which will be available if we get the ASP Waiver from HQ on the Fire & Emergency Services program), to pre-brief Vehicle Ops to the Wing. Next week Larry and I and the team will focus on getting those charts ready.

Need Glenn over here Monday a.m. to work that process and set our course for successful execution of the source selection.

Thanks,
Susan

-----Original Message-----
From: Gilmour, John E Col 45 CONS/CC
Sent: Thursday, September 20, 2007 9:27 AM
To: Richardson, Sherri L Civ 45 CONS/LGCAB; Griffin, Larry Civ 45 CONS/LGCZC; Graham, Susan Civ 45 CONS/LGCZ; Hoover, Marnell L Civ 45 SW/CDA; Scanes, Glenn W Civ 45 CONS/LGCCB
Cc: McLaren, Stephen A Civ 45 CONS/DBO
Subject: RE: ASP for Vehicle Ops and Fire and Emergency Services

ALCON, I can now confirm, after a late telecon with A7K yesterday, that VOMS is NOT a candidate for inclusion in Multi-Wing. LOGOPS, which is outside of IBSR, is in play.



Protected Material To Be Disclosed
Only In Accordance With U.S.
Court Of Federal Claims Protective Order